UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JAIME EVANS,

        Plaintiff,

  v.

HARD ROCK CAFÉ INTERNATIONAL (USA), INC., a corporation; STEWART GARNETT; and DOES I through XX, inclusive

        Defendants.

NO. 2:07-cv-1074 FCD DAD

MEMORANDUM AND ORDER

----oo0oo----

This matter comes before the court on defendant Hard Rock Café International's ("Hard Rock") motion to dismiss five of plaintiff Jaime Evans' ("Evans") eleven claims for relief pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below,[1] defendant's motion is DENIED.

///

///

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

## BACKGROUND[2]

Evans was employed by Hard Rock as a server trainer, rocker and bartender. (Pls.' Compl., filed June 5, 2007 ("Compl."), ¶ 16.) Following employment at a separate Hard Rock location, Evans transferred to Hard Rock's Sacramento location in February of 2006. (Id.)

In May of 2006, Evans' co-worker, defendant Stewart Garnett ("Garnett"), began to make inappropriate and offensive comments to Evans and at least one other female employee. (Id. ¶ 17.) Garnett's sexually explicit comments escalated to unwanted touching including, but not limited to, reaching up her skirt and shorts, spanking her buttocks, and attempting to kiss her on the lips. (Id. ¶ 18.)

In late May or early June of 2006, Evans and a female co-worker, Aimee Hernandez, met with Hard Rock's General Manager Jim Borton ("Borton") to complain about Garnett. (Id. ¶ 20.) Evans and Hernandez informed Borton that Garnett's actions made them uncomfortable and provided examples of his harassment. (Id.)

---

[2] The facts of this case are taken from plaintiffs' allegations in the complaint.

Defendant, relying on Van Buskirk v. CNN, 284 F.3d 977 (9th Cir. 2002), asks the court to consider extrinsic evidence in support of its Motion. (Def's. Reply Mot., filed Aug. 17, 2007 ("Reply Mot."), at 7.) However, in Van Buskrik, neither party challenged the court's decision to review the proffered evidence. In this case, plaintiff objects to the court's consideration of defendant's records. Therefore, in ruling on defendant's motion the court will only consider the allegations set forth in the complaint. Cf. Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) (considering documents "whose authenticity no party questions" on a motion to dismiss) (overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002).

Borton assured Evans and Hernandez he would handle the situation. (Id.)

Hard Rock subsequently held a mandatory employee meeting addressing workplace sexual harassment. (Id. ¶ 21.) Immediately following the meeting, Garnett made a sexually explicit remark to Evans. (Id.) Evans sought out Borton, informing him Garnett was continuing to harass her. (Id.) Borton stated he would talk to Garnett again. (Id.)

Following these events, Garnett continued to make unwanted advances and sexually harass Evans. (Id. ¶ 22.) Evans raised the issue with Borton, advising him that Garnett's ongoing behavior was making her incredibly stressed and uncomfortable. (Id. ¶ 23.) Evans told Borton she was not sleeping and vomiting before work. (Id.) Borton commented that he had already discussed the issue with Garnett "many times," but that he would "fix it." (Id.)

On July 1, 2006, Evans had an evaluation meeting with Hard Rock Manager Loren Abraham. (Id. ¶ 24.) During the meeting Abraham told Evans she was performing well at her job, but that she needed to be more assertive in her verbal leadership. (Id.) Evans responded that her assertiveness had declined in large part as a response to Garnett's persistent sexual harassment. (Id.) Abraham assured Evans that the situation with Garnett would be appropriately handled. (Id.) The same day, Garnett was issued a "Final Written Warning" by Hard Rock. (Id. ¶ 25.)

Three days later, on July 4, 2006, Garnett came to Hard Rock, despite not being schedule to work. (Id. ¶ 27.) Garnett drank at the bar and proceeded to follow both Evans and Hernandez

1  around the restaurant while they worked.  (Id.)  Garnett then
2  tried to touch and hug both women.  (Id.)  As a result, Evans
3  later suffered a panic attack and had to leave for the day.
4  (Id.)  Evans also advised Hard Rock's Manager Steve Romero
5  ("Romero") she could not work with Garnett any longer.  (Id.)
6  Romero replied that Evans still needed to work the shifts she was
7  scheduled.  (Id.)  Evans arranged for a co-worker to cover her
8  shifts and did not return to work for several days.  (Id.)

9       On or about July 9, 2006, Evans was scheduled to work with
10 Garnett.  (Id. ¶ 28.)  Evans told Borton she did not want to
11 work with Garnett, but would for that day.  (Id.)  She also
12 expressed frustration that nothing had been done to conclusively
13 remedy the situation.  (Id.)  Borton then advised her that
14 Garnett had signed a letter saying he would be terminated if he
15 continued to engage in sexually harassing conduct.  (Id.)

16      Despite Borton's assurance, Garnett continued to harass
17 Evans while she worked.  (Id. ¶ 29.)  On one occasion he arrived
18 early and sat staring at Evans for forty five minutes.  (Id.)  On
19 another occasion, he squirted her with a water bottle.  (Id.)  On
20 July 31, 2006, Evans again told Borton she would not work with
21 Garnett.  (Id.)  Borton promised to reschedule her shifts so that
22 they would not coincide with Garnett's.  (Id. ¶ ¶ 30-31.)
23 Nonetheless, on August 2, 2006 Evans was scheduled to work with
24 Garnett.  (Id. ¶ 31.)

25      From that date on, Evans proceeded to call before her shift
26 to see whether she was scheduled to work with Garnett.  (Id.)  If
27 she was scheduled to work with him, Evans switched shifts with a
28 co-worker to avoid coming into contact with Garnett.  (Id.)

4

**STANDARD**

On a motion to dismiss, the allegations of the complaint must be accepted as true. Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. See id.

Nevertheless, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters, 459 U.S. 519, 526 (1983). Moreover, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

Ultimately, the court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007). Only where a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed. Id. "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S.

1  506, 514 (2002) (quoting Hudson v. King & Spalding, 467 U.S. 69,
2  73 (1984)).
3      In ruling upon a motion to dismiss, the court may consider
4  only the complaint, any exhibits thereto, and matters which may
5  be judicially noticed pursuant to Federal Rule of Evidence 201.
6  See Mir v. Little Co. Of Mary Hospital, 844 F.2d 646, 649 (9th
7  Cir. 1988); Isuzu Motors Ltd. v. Consumers Union of United
8  States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

**ANALYSIS**

Plaintiff's complaint alleges Hard Rock's conduct resulted in her emotional distress, loss of employment opportunities and mental anguish. Specifically, plaintiff brings claims for (1) hostile work environment under Title VII and FEHA; (2) retaliation under Title VII and FEHA; (3) failure to prevent sexual harassment under FEHA; (4) wrongful termination in violation of public policy; (5) negligent hiring, supervision, training and retention; (6) negligence; (7) assault; (8) battery; and (9) negligent infliction of emotional distress. Defendant moves to dismiss plaintiff's claims for negligence, negligent infliction of emotional distress, and negligent hiring, supervision, training, and retention because it contends such claims are barred by California's Workers Compensation Act. Defendant also moves to dismiss plaintiff's claims for assault and battery on the grounds that she has failed to state a claim upon which relief can be granted.

**A.   Negligent Infliction of Emotional Distress**

Defendant contends that the exclusive remedy clause of California's Workers' Compensation Act ("WCA") bars plaintiff's

6

claim for negligent infliction of emotional distress ("NIED"). (Mot. at 6.)  Plaintiff argues that claims for NIED are not subject to the exclusive remedy clause of the WCA when it is premised on an employer's conduct that violates fundamental public policy.  (Pl.'s Opp'n Mot., filed Aug. 7, 2007 ("Opp'n"), at 8.)

Where a plaintiff's emotional distress claim results from a defendant's misconduct which exceeds the normal risks of the employment relationship, a plaintiff's claim is not preempted by the WCA.  Fretland v. County of Humboldt, 69 Cal. App. 4th 1478, 1492 (1999); see also Cabesuela v. Browning-Ferris Industries of California, 68 Cal. App. 4th 101, 112-13  (1998) (stating that plaintiff's emotional distress claim is not barred by WCA in suit alleging wrongful termination in violation of public policy). Sexual harassment is a form of sex discrimination and fundamentally violates determinations of state public policy. Lyle v. Warner Bros. Television Productions, 38 Cal. 4th 264, 277 (2006).

Plaintiff alleges in her complaint that defendant knew or should have known that plaintiff was being subject to sexual harassment and that their failure to exercise due care in preventing such harassment caused her emotional distress. (Compl. ¶ 89.)  As such, plaintiff has sufficiently alleged that her NIED claim is based upon Garnett's sexual harassment, conduct that fundamentally violates California public policy and is thus, beyond the normal risks of the employment relationship. Therefore Evans' NIED claim is not barred by the exclusivity provision of the WCA.

1  Defendant argues that while intentional emotional distress
2 may fall outside the exclusivity provision of the WCA, a claim
3 for NIED is barred by the same. (Def's. Reply Mot., filed Aug.
4 17, 2007 ("Reply Mot."), at 3.)  However, in Maynard v. City of
5 San Jose, the Ninth Circuit explicitly held that the plaintiff's
6 claims of *intentional and negligent* infliction of emotional
7 distress were not preempted by the WCA.  Maynard v. City of San
8 Jose, 37 F.3d 1396, 1405 (9th Cir. 1994); see also Smith v. Int'l
9 Bhd. of Elec. Workers, 109 Cal. App. 4th 1637, 1658 (2003)
10 (holding that plaintiff's NIED claim was not barred by the WCA
11 because it was based on his employer's violation of fundamental
12 public policies).  Defendant argues that the Maynard court's
13 holding with was incorrect and alternatively, that such a finding
14 was merely dicta.  The court finds neither of these arguments
15 persuasive.  In Maynard, the Ninth Circuit affirmed the jury's
16 verdict for the plaintiff regarding his claim for NIED, finding
17 that such a claim was not preempted by the WCA because it arose
18 out of conduct that implicates fundamental public policies.  37
19 F.3d at 1405-06.  Contrary to defendant's assertion, the Maynard
20 court's finding does not "border on dicta."  (Reply Mot. at 4).
21 As such, no matter how strongly defendant contends it was
22 incorrectly decided, the Ninth Circuit's decision in Maynard is
23 binding on this court.  Accordingly, Hard Rock's motion to
24 dismiss plaintiff's eleventh claim for NIED is DENIED.

**B.  Negligence; Negligent Hiring, Supervision, Training and Retention**

27  Defendant similarly argues that plaintiff's claims for
28 negligence and negligent hiring, supervision, training and

8

1 retention are barred by the exclusivity doctrine of the WCA.
2 (Mot. at 4-6.)  Plaintiff contends an exception to the
3 exclusivity rule applies when an employee suffers injury as a
4 result of discrimination.  (Opp'n, at 7.)
5     The WCA generally provides the exclusive remedy for an
6 employee's work-related injury.  2 WITSUM Workers Compensation
7 Act § 24 (2005).  However, incidents where the "defendant's
8 misconduct exceeds the normal risk of the employment
9 relationship" are excepted from the exclusivity provision.
10 Fretland v. County of Humboldt, 459 F. Supp. 2d 959, 1492 (1999)
11 (citing Livitsanos v. Superior Court, 2 Cal. 4th 744, 756
12 (1992)).  As such, claims of negligence are not necessarily
13 preempted by the WCA's exclusivity provision.  Scott v. Solano
14 County Health and Social Services, 459 F. Supp. 2d 959, 971 (E.D.
15 Cal. 2006).  "[T]he [WCA] does not bar . . . allegations of a
16 negligent response to harassment or discrimination claims because
17 these claims are based on accusations of discrimination, which
18 'is not a normal risk of the compensation bargain.'" Id. (citing
19 Fretland, 69 Cal. App. 4th at 1492); Doerflex-Casner v. Placer
20 County Dep't of Pub. Works, 2006 U.S. Dist. LEXIS 36066, 26-27
21 (2006); see Maynard, 37 F.3d at 1405 ("Personal injury claims
22 that implicate fundamental public policy considerations are not
23 preempted by the Workers Compensation Act.").
24     Plaintiff's claims for negligence and negligent hiring,
25 supervision, training and retention are based upon defendant's
26 alleged failure to fulfill its duty to prevent sexual harassment,
27 (Compl. ¶¶ 70, 74), conduct that falls outside the normal risk of
28 the compensation bargain.  Therefore, defendant's motion to

9

dismiss with respect to plaintiff's seventh and eighth claims for relief is DENIED.

**C.  Assault and Battery**

Finally, defendant argues that it cannot be held vicariously liable for Garnett's actions because there is no nexus between his employment with defendant Hard Rock and the alleged batteries he inflicted on Evans. (Mot. at 8.) Plaintiff argues that Garnett's conduct was, at the very least, reasonably foreseeable to Hard Rock and thus, Hard Rock should be held vicariously liable for the torts committed by Garnett. (Opp'n at 9.)

Vicarious liability is established when an employee acted within the scope of his employment when he engaged in the conduct. Farmers Ins. Group v. Santa Clara County, 11 Cal. 4th 992, 997 (1995). Determinations regarding scope of employment are broadly construed. Id. at 1004. Furthermore, "an employer's vicarious liability may extend to willful and malicious torts of an employee as well as negligence. . . . [A]n employee's tortious act may be within the scope of the employment even if it contravenes an express company rule and confers no benefit to the employer." Id.

An employer may be vicariously liable if the employee's act was either required by the employer or incidental to the employee's duties. Yamaguchi v. Harsmut, 106 Cal. App. 4th 472, 482 (2003). Alternatively, an employer may be held liable if the employee's conduct was reasonably foreseeable to the employer. Id.; see also Lisa M. v. Henry Mayo Newhall Mem'l Hosp., 12 Cal. 4th 291, 297-99 (1995). Conduct is reasonably foreseeable if the

10

incident leading to injury is an 'outgrowth' of the employment. Id. at 298 (citations omitted). "A sexual tort will not be considered [as reasonably foreseeable] . . . unless its motivating emotions were fairly attributable to work related events or conditions." Id. at 301.

Plaintiff alleges that, on numerous occasions, Garnett had engaged in offensive conduct during the course of her employment with defendant, plaintiff had reported the conduct to defendant, and subsequently, such conduct continued. Plaintiff also alleges that she informed defendant that she could not work with Garnett and that she arranged for co-workers to cover her shifts to avoid him. See Yamaguchi, 106 Cal. App. at 482 (noting that evidence of previous work disputes and threats between co-workers that did not socialize outside the work environment and threats by one co-worker that he would strike plaintiff with a knife could give rise to the imposition of vicarious liability upon employer for the subsequent assault with a knife); cf. Lisa M., 12 Cal. 4th at 302 (holding that an employer was not vicariously liable for a sexual tort of its employee where there was no evidence that the employee's conduct was foreseeable to the employer either due to nature of the work or prior interactions between plaintiff and employee). Giving the plaintiff every reasonable inference from the allegations in her complaint, plaintiff has sufficiently alleged that Garnett's alleged tortious conduct were casually attributable to his employment with defendant and an outgrowth of workplace relationships, conditions and events. Therefore, defendant's motion to dismiss plaintiff's claims for assault and battery are DENIED.

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss plaintiff's claims pursuant to Rule 12(b)(6) is DENIED.

IT IS SO ORDERED.

DATED: September 24, 2007

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

12